UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN

Case: 2:21-cr-20613
Assigned To : Edmunds, Nancy G.
Referral Judge: Altman, Kimberly G.
Assign. Date : 9/24/2021
Description: USA V. GEORGE, ET. AL (kb)

UNITED STATES OF AMERICA

v.

D-1 ANTONIO GEORGE,
D-2 KEVIN WOMBLE
D-3 ANDRAE SIMS
D-4 SARAH VIDAL

        Defendant.

VIOLATION: 18 U.S.C. § 1349
18 U.S.C. § 2
26 U.S.C. § 7206(2)
18 U.S.C. § 982

_____/

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

At all times relevant to this Information:

### GENERAL ALLEGATIONS

### Payroll Protection Program Loans

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred

to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

2. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

3. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

4. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business

spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

### Economic Injury Disaster Loans

5. The Economic Injury Disaster Loan ("EIDL") program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters

6. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance is determined by the number of employees the applicant certifies having. The advances do not have to be repaid.

7. In order to obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant must also certify that all of the information in the application is true and correct to the best of the applicant's knowledge.

8. EIDL applications are submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance. The amount of the loan, if the application is approved, is determined based, in part, on the information provided in the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance are issued directly by the SBA. EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtains a loan under the Paycheck Protection Program, the EIDL funds cannot be used for the same purpose as the Paycheck Protection Program funds.

## The Defendants and Related Entities

It is relevant to the Information that during the above-listed time period:

9. Defendant Antonio George ("GEORGE") was a resident of Oakland County within the Eastern District of Michigan.

10. GEORGE was an owner, registered agent, banking signatory, and/or otherwise affiliated with the following entities: (1) DXX Enterprises, LLC; (2) The Kongo Enterprise; (3) SFX Transportation, Inc.; (4) Seven Investment Group, LLC; (5) Cabrejas Renovations, LLC; (6) The Tax Wolf, LLC; (7) Diva Nails & Spa III, LLC; (8) Orcas, Inc.; (9) S&V Alliance, LLC; (10) Express Property Preservation, LLC; (11) Bless My Grind, LLC; (12) Cercle Interieur, Inc.; (13) The Black Wolf, Inc.; (14) Defined Jewelry, Inc.; (15) AMG Solutions, LLC; and (16) Kwatili, LLC

(collectively, the "Defendant Entities"). Each of the Defendant Entities are registered in the State of Michigan and located within the Eastern District of Michigan.

11. Defendant Kevin Womble ("WOMBLE") was a resident of Wayne County within the Eastern District of Michigan.

12. WOMBLE was an owner, registered agent, banking signatory, and/or otherwise affiliated with the following Defendant Entity: Bless My Grind, LLC.

13. Defendant Andrae Sims ("SIMS") was a resident of Wayne County within the Eastern District of Michigan.

14. SIMS was an owner, registered agent, banking signatory, and/or otherwise affiliated with the following Defendant Entities: (1) The Black Wolf, Inc.; and (2) Defined Jewelry, Inc.

15. Defendant Sarah Vidal ("VIDAL") was resident of Oakland County within the Eastern District of Michigan.

16. VIDAL was an owner, registered agent, banking signatory, and/or otherwise affiliated with the following Defendant Entities: (1) Cabrejas Renovations, LLC; (2) S&V Alliance, LLC; (3) Orcas, Inc.; (4) Kwatili, LLC; and (5) Cercle Interieur, Inc.

**COUNT 1**
**Conspiracy to Commit Wire Fraud**
**(18 U.S.C. § 1349)**
**Against All Defendants**

17. Paragraphs 1 through 16 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

18. Between approximately March 30, 2020 through August 27, 2020, in the Eastern District of Michigan, GEORGE, WOMBLE, SIMS, and VIDAL (collectively the "Defendants") and others did knowingly combine, conspire, confederate and agree, to commit certain offenses against the United States, that is to violate Title 18, United States Code, section 1343, to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

## Purpose of the Conspiracy

19. It was a purpose of the conspiracy for the Defendants and others to unlawfully enrich themselves by, among other things; (a) submitting, and causing the submission of false and fraudulent PPP and EIDL loan applications; (b) concealing and causing the concealment of the false and fraudulent PPP and EIDL

loan applications and the receipt and transfer of proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the Defendants and others.

## **Manner and Means of the Conspiracy**

20. Between approximately April 19, 2020, through July 25, 2020, the Defendants and others submitted, and caused the submission of, at least 15 false and fraudulent PPP loan applications worth a total of $2,420,542 on behalf of the of the Defendant Entities (collectively, the "PPP Loans"). The PPP Loans are listed in the following table by loan date, the funding financial institution or processing company and loan amount.:

| No. | Loan Date | Defendant Entity | Loan Amount |
|---|---|---|---|
| 1 | April 19, 2020 | DXX Enterprise, Inc. | $217,983.00 |
| 2 | April 29, 2020 | SFX Transportation, Inc. | $206,100.00 |
| 3 | April 29, 2020 | Seven Investment Group LLC | $192,140.00 |
| 4 | May 2, 2020 | The Kongo Enterprise | $198,100.00 |
| 5 | May 2, 2020 | Cabrejas Renovations LLC | $69,800.00 |
| 6 | May 7, 2020 | The Tax Wolf LLC | $69,300.00 |
| 7 | May 15, 2020 | Diva Nails & Spa III LLC | $193,700.00 |
| 8 | May 15, 2020 | Orcas, Inc. | $111,100.00 |
| 9 | May 16, 2020 | S&V Alliance LLC | $72,100.00 |
| 10 | May 20, 2020 | Express Property Preservation LLC | $217,600.00 |

7

| 11 | June 1, 2020 | Bless My Grind LLC | $195,383.00 |
| 12 | June 3, 2020 | Cercle Interieur, Inc. | $195,383.00 |
| 13 | June 3, 2020 | The Black Wolf, Inc. | $195,383.00 |
| 14 | June 8, 2020 | Defined Jewelry, Inc. | $197,000.00 |
| 15 | July 25, 2020 | AMG Solutions, Inc. | $89,470.00 |

21. Additionally, between approximately March 30, 2020, through August 27, 2020, the Defendants and others submitted, and caused the submission of, at least 14 false and fraudulent EIDL loan applications worth a total of $1,734,300 on behalf of the of the Defendant Entities (collectively, the "EIDL Loans"). The EIDL Loans are listed in the following table by loan date, the Defendant Entity for which the loan application was submitted, and loan amount.:

| No. | Loan Date | Defendant Entity | Loan Amount |
|---|---|---|---|
| 1 | March 30, 2020 | The Kongo Enterprise | $10,000.00 |
| 2 | June 23, 2020 | Seven Investment Group LLC | $10,000.00 |
| 3 | June 25, 2020 | DXX Enterprise, Inc. | $160,000.00 |
| 4 | June 25, 2020 | AMG Solutions LLC | $160,000.00 |
| 5 | June 26, 2020 | Kwatili LLC | $160,000.00 |
| 6 | June 26, 2020 | S&V Alliance LLC | $160,000.00 |
| 7 | June 30, 2020 | Cercle Interieur, Inc. | $10,000.00 |
| 8 | June 30, 2020 | Defined Jewelry, Inc. | $114,300.00 |
| 9 | July 9, 2020 | Orcas, Inc. | $160,000.00 |
| 10 | July 11, 2020 | Bless My Grind LLC | $160,000.00 |
| 11 | July 15, 2020 | The Tax Wolf LLC | $160,000.00 |
| 12 | July 31, 2020 | The Black Wolf, Inc. | $160,000.00 |
| 13 | August 14, 2020 | SFX Transportation, Inc. | $150,000 |

| 14 | August 27, 2020 | Cabrejas Renovations LLC | $160,000.00 |

22. The funds for the PPP and EIDL loans were disbursed to the Defendants and others. The funds were sent via ACH wire transfer to bank accounts that the Defendants controlled.

23. In each of the applications for the PPP and EIDL loans, the Defendants and others falsely represented the amount of payroll and the number of employees working for the Defendant Entities.

24. Specifically, GEORGE obtained payroll information from unrelated entities. GEORGE then used the unrelated entities' payroll information to support applications he submitted, or caused to be submitted, on behalf of the Defendant Entities. GEORGE personally prepared and submitted the false and fraudulent PPP and EIDL loan applications on behalf of Seven Investment Group LLC, The Tax Wolf LLC and AMG Solutions LLC. GEORGE also provided falsified payroll and employee information to WOMBLE, SIMS, and VIDAL and assisted them in preparing and knowingly submitting false and fraudulent PPP and EIDL loan applications on behalf of the other Defendant Entities.

25. The false and fraudulent payroll information contained in the PPP and EIDL loan applications was material insofar as it induced financial institutions and the SBA to disburse funds to the Defendants which they were not eligible to receive.

26. Each of the false and PPP and EIDL loan applications set forth herein were submitted through wire communications used in interstate commerce.

27. Upon receipt of the fraudulently obtained loan funds, the Defendants and others undertook to conceal the nature and source of the funds by, among other things, fraudulently establishing accounts with payroll processing companies and engaging in financial transactions designed to conceal that the loan proceeds were fraudulently obtained.

28. All in violation of Title 18, United States Code, Section 1343.

## COUNTS 2 through 4
### (Aiding and Assisting in the Preparation and Presentation of False and Fraudulent Returns)
### (26 U.S.C. § 7206(2))
### Against D-1 ANTONIO GEORGE

29. GEORGE was the owner and operator of The Tax Wolf, LLC, a tax-preparation company which was located within the Eastern District of Michigan.

30. The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States.

31. A Form 1040 was an income tax return filed with the IRS in the name of an individual taxpayer that reported, among other things, the taxpayer's income, deductions, and credits, to determine the amount of tax owed by, or the amount of tax refund claimed by, the taxpayer.

32. A Schedule C, Profit or Loss from Business (Sole Proprietorship) ("Schedule C-EZ") were IRS forms that taxpayers attached to Forms 1040, when applicable, to report, among other items, gross receipts, expenses, and profit or loss from businesses operated by the taxpayers as sole proprietorships.

33. Through the Tax Wolf, LLC, GEORGE prepared and caused to be prepared U.S. Individual Tax Returns, Forms 1040 ("Forms 1040") and related schedules on behalf of taxpayers for submission to the IRS.

34. GEORGE prepared and caused to be prepared and filed with the IRS false and fraudulent Forms 1040 with Schedules C and C-EZ for the clients of the Tax Wolf for the tax years 2016 through 2019.

35. GEORGE'S preparation and fraudulent Forms 1040 and related Schedules C and C-EZ generated falsely reported tax credits which resulted in the IRS's issuing tax refunds to clients to which they were not entitled, and tax refunds to clients in amounts greater than those to which they were entitled.

36. On or about the dates set forth below within the Eastern District of Michigan and elsewhere, GEORGE, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation under, and in connection with a matter arising under, the Internal Revenue laws of returns, claims, and other documents, to wit: Forms 1040 and attached Schedules, for the clients listed below, whose identities are known to the Grand Jury, for the tax years listed below, which returns, claims and other documents were false and fraudulent as to one or more

material matters, in that they represented that these clients earned wages and income as set forth below, whereas, as GEORGE then and there knew, said clients did not earn the wages and income as set forth below:

| Count No. | Tax Year | Filing Date (Approximate) | False Items |
|---|---|---|---|
| 2 | 2017 | 2/26/2018 | $8,343; Form 1040, Line 12- Business Income or Loss (from Schedule C Business) |
| 3 | 2018 | 2/11/2019 | $9,263; Form 1040, Schedule 1, Line 12- Business Income or Loss (from Schedule C Business) |
| 4 | 2019 | 3/9/2020 | $9,757; Form 1040, Schedule 1, Line 3- Business Income or Loss (from Schedule C Business) |

All in violation of Title 26, United States Code, Section 7206(2).

## FORFEITURE ALLEGATIONS

**18 U.S.C. § 982(a)(2)(a) and 18 U.S.C. § 981(a)(1)(c) with 28 U.S.C. § 2461**

37. The above allegations contained in this Information are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(2)(a) and 18 U.S.C. § 981(a)(1)(c) with 28 U.S.C. § 2461.

38. As a result of violating 18 U.S.C. § 1349, as set forth in this Information, the Defendants shall forfeit to the United States any property, real or personal, which represents or is traceable to the gross proceeds obtained, directly or indirectly, as the result of his violation of 18 U.S.C. § 1349.

39. Specifically, GEORGE will be required to forfeit $2,602,349.29 to the United States, which is the total amount of the fraudulently obtained PPP and EIDL loan money that was disbursed to him and/or his co-conspirators.

40. <u>Substitute Assets:</u> If all or any of the forfeited sums:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of GEORGE up to the value of the $2,602,349.29 still outstanding.

SAIMA MOHSIN
Action United States Attorney
Eastern District of Michigan

JOSEPH S. BEEMSTERBOER
Acting Chief
Fraud Section, Criminal Division
United States Department of Justice

/s/John K. Neal
JOHN K. NEAL
Assistant United States Attorney
Chief, White Collar Crime Unit
Eastern District of Michigan

/s/ Patrick J. Suter
PATRICK J. SUTER
Trial Attorney

Dated: September 24, 2021

13

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover S | Case: 2:21-cr-20613<br>Assigned To : Edmunds, Nancy G.<br>Referral Judge: Altman, Kimberly G.<br>Assign. Date : 9/24/2021<br>Description: USA V. GEORGE, ET.<br>AL (kb) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: |

**Case Title:** USA v. Antonio George, et al

**County where offense occurred :** Oakland County

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

___ Indictment/ ___ Information --- **no** prior complaint.
___ Indictment/ ✓ Information --- based upon prior complaint [Case number: 20-mj-30340   ]
___ Indictment/ ___ Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____   **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

September 24, 2021
Date

Patrick J. Suter
Patrick J. Suter
Trial Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 202-679-1430
Fax: 313-226-0816
E-Mail address: Patrick.suter2@usdoj.gov
Attorney Bar #: CA 242494

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.